Matter of Kowalski v A Quest Corp.
2026 NY Slip Op 03343
May 28, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of the Claim of Krzysztof Kowalski, Appellant,
v
A Quest Corporation et al., Respondents. Workers' Compensation Board, Respondent.

Decided and Entered:May 28, 2026
CV-24-2073
Calendar Date: May 12, 2026
Before: Garry, P.J., Pritzker, Reynolds Fitzgerald, Powers And Corcoran, JJ.

Schotter Millican, LLP, Brooklyn (Geoffrey Schotter of counsel), for appellant.
Lois Law Firm LLC, New York City (Christopher Xyloportas of counsel), for A Quest Corporation and others, respondents.
Vecchione, Vecchione & Cano, LLP, Garden City Park (Michael F. Vecchione of counsel), for PAL Environmental Safety Corp. and another, respondents.

[*1]
Garry, P.J.
Appeal from a decision of the Workers' Compensation Board, filed November 18, 2024, which held that the employer and its workers' compensation carrier were not responsible for claimant's entire hearing loss.
From December 12, 1965 through January 17, 2016, claimant, an asbestos handler, worked for numerous employers, including A Quest Corporation (for the week ending December 27, 2015), PAL Environmental Safety Corp. (for the week ending January 3, 2016), D & S Restoration Inc. (for the week ending January 3, 2016), Pinnacle Environmental Corp. (for the weeks ending January 3, 2016 and January 10, 2016) and Vestar, Inc. (for the weeks ending January 10, 2016 and January 17, 2016). In January 2017, claimant filed an occupational disease claim, alleging a date of injury or onset of illness of April 16, 2016 and that, while working for Vestar, Inc., specifically, he sustained hearing loss due to prolonged and repeated exposure to loud noise. Following hearings, including testimony from claimant, a Workers' Compensation Law Judge (hereinafter WCLJ) issued a December 2017 decision finding that Vestar was not the employer of last exposure, as the only noise exposure during that employment was to domestic vacuum cleaners. The inquiry thus shifted to Pinnacle and D & S. Following additional hearings, which included additional testimony from claimant and employer witnesses, a WCLJ issued an October 2018 decision disallowing the claim, finding that there was no injurious exposure that would lead to binaural hearing loss from the jobs performed by claimant for those employers either. In an April 2019 panel decision, the Workers' Compensation Board, among other things, rescinded that disallowance, returned the matter to the hearing calendar for further development of the record regarding the last employer where claimant was exposed to injurious or harmful noise, and held that issues regarding causal relationship were premature as the issue was presently only where claimant was exposed to harmful noise.
At subsequent hearings in 2023 and 2024, claimant asserted that his last injurious exposure to loud noise was while he worked on a project for Quest during the week ending December 27, 2015. Quest was accordingly placed on notice of the claim, as was PAL Environmental. Both of those employers controverted the claim, and, following additional hearings, further testimony from claimant and employer witnesses, and depositions of physicians who examined claimant, a WCLJ issued a March 2024 decision finding, among other things, that claimant last experienced injurious exposure to loud noise while working for Quest. The occupational disease claim was established for binaural hearing loss, with a date of disablement of March 27, 2016, three months after the last date of exposure. By this point, all of the other employers identified as potentially liable for the subject claim had been discharged and removed from notice.
Quest and its workers' compensation carrier administratively [*2]appealed, and, in a November 2024 panel decision, the Board rescinded the March 2024 decision, disallowed the claim and closed the case. The Board found that the WCLJ failed to render any findings of fact upon which its determination was based and went on to conclude that claimant had not offered any credible evidence that his last injurious exposure occurred while working for Quest or that his noise exposure was different than that experienced while working for subsequent employers in January 2016. Claimant appeals.
We affirm. An occupational disease is "a disease resulting from the nature of employment and contracted therein" (Workers' Compensation Law § 2 [15]; see Matter of Mack v County of Rockland, 71 NY2d 1008, 1009 [1988]). As relied upon by the Board, Workers' Compensation Law article 3-a provides that "[t]he last employer in whose employment the employee was exposed to harmful noise shall . . . be liable for the payment of the total compensation due the employee for his loss of hearing caused by all of his employments in which he was exposed to harmful noise" (Workers' Compensation Law § 49-ee [1]; accord Matter of Noto v Ford Motor Co., 301 AD2d 704, 705 [3d Dept 2003]; see Matter of Wiess v Mittal, 96 AD3d 1175, 1176 [3d Dept 2012]; Matter of Rushnek v Ford Motor Co., 85 AD2d 824, 826 [3d Dept 1981]). Claimant bore the burden of establishing both who that last employer was and that he was exposed to harmful noise during his employ (see Matter of Granville v Town of Hamburg, 136 AD3d 1254, 1255 [3d Dept 2016]; Matter of Williams v Colgate Univ., 54 AD2d 1121, 1122 [3d Dept 2008]), and it is well established that "[t]he Board is the sole arbiter of witness credibility" in determining if that burden was met (Matter of Wiess v Mittal, 96 AD3d at 1177 [internal quotation marks and citation omitted]).
In his most recent testimony, claimant testified that his last injurious exposure to loud noise was in December 2015 while working for Quest on a pipe insulation removal project at a public school for three days. Similar to his prior attestations regarding other projects with other employers, claimant testified that he was exposed to different types of machinery during that time, including chipping guns, grinders, commercial vacuums and Micro Trap air filtration systems, and that those machines were operating the entire time that he was working. He also stated that, as an asbestos handler and remover, he used electric saws, chipping guns, drills, Sawzalls, grinders, Micro Traps and a nail gun. The part owner (hereinafter the owner) of Quest, who ran field operations, testified that claimant was hired to remove asbestos and/or pipe insulation at the public school and that his duties included building a tent, removing insulation and cleaning the pipes that were insulated. The owner reported that there was no electrical/power equipment involved and that the removal of insulation was done by hand and with brushes. He further explained that, on the [*3]second day of work, claimant was required to build a tent and remove insulation in the cafeteria by wetting the pipes and removing insulation by hand. Work on the third day involved breakdown, such as taking down the plastic sheeting that was used for containment. The owner denied the use of Sawzalls, chipping guns, grinders and electric saws during the job and reiterated that pipe insulation was removed only by hand using hand tools and that the pipes were cleaned using a wire brush and pan along with a small vacuum. A supervisor for Quest onsite at the subject project confirmed that no noisy machines were used. Similar to the testimony offered by the owner, the supervisor testified that they used hand tools, such as small knives, scrapers and brushes, to clean the pipes. The supervisor testified that saws and chipping guns, and any other electric power tool, were not to be used to clean the pipes of insulation. Small vacuums and Micro Traps were used, but the small vacuums were not used for more than an hour. The supervisor also testified that there was no hearing protection used because it was not noisy.
Although the Board could have credited claimant's generalized testimony regarding the tools that he purportedly used and the injurious noise that he was exposed to while working for Quest on the public school project, the Board was entitled to credit the testimony from Quest's witnesses, which was consistent in every material respect, regarding the means by which claimant was required to remove the pipe insulation at the project in question and that the removal did not involve machinery, power tools or loud noise. The testimony from Quest's witnesses reflected that claimant was not exposed to injurious noise at that job site while working for Quest. Accordingly, substantial evidence supports the Board's determination that claimant failed to meet his burden to show that he sustained distinct injurious exposure to loud noise while working for Quest (see Matter of Spada v Keeler Constr. Co., 242 AD3d 1276, 1279 [3d Dept 2025]; Matter of Gandurski v Abatech Indus., Inc., 194 AD3d 1329, 1331 [3d Dept 2021]; Matter of Corina-Chernosky v Dormitory Auth. of State of N.Y., 157 AD3d 1067, 1069 [3d Dept 2018]; compare Matter of Granville v Town of Hamburg, 136 AD3d at 1255-1256; Matter of Noto v Ford Motor Co., 301 AD2d at 705).FN1
Pritzker, Reynolds Fitzgerald, Powers and Corcoran, JJ., concur.
ORDERED that the decision is affirmed, without costs.

Footnotes

Footnote 1
Notwithstanding its directive that the subject case be closed, the Board has continuing jurisdiction over the matter, and claimant remains able to put forth any additional proof he may have regarding exposure to harmful noise and where that exposure occurred (see Workers' Compensation Law § 123).